# EXHIBIT A

Daniel I. Rubin, Esq. – NJ Attorney ID No. 015552005
THE WOLF LAW FIRM, LLC
1520 U.S. Highway 130 - Suite 101
North Brunswick, NJ 08902
Tel. 732-545-7900; Fax 732-545-1030

Christopher J. McGinn, Esq. – NJ Attorney ID No. 40832001
THE LAW OFFICE OF CHRISTOPHER J. McGINN
75 Raritan Ave. - Suite 220
Highland Park, NJ 08904
Tel. 732-937-9400; Fax 800-931-2408
*Attorneys for Plaintiff and the putative class*

| | |
|---|---|
| ANDREW POLITI, on behalf of himself and others similarly situated, | SUPERIOR COURT OF NEW JERSEY MIDDLESEX COUNTY – LAW DIVISION |
| Plaintiff(s), | Civil Action: |
| vs. | Docket No. MID-L-4880-14 |
| PRESSLER & PRESSLER, LLP a/k/a PRESSLER and PRESSLER, LLP, | **SUMMONS** |
| Defendant(s). | |

From The State of New Jersey
To The Defendant(s) Named Above:        **PRESSLER & PRESSLER, LLP**
                                        a/k/a PRESSLER and PRESSLER, LLP

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

Dated:  August 19, 2014                    */s/Elisabeth Ann Strom*
                                           Elisabeth Ann Strom
                                           Acting Clerk of the Superior Court of New Jersey

**Name of defendant to be served:**        **PRESSLER & PRESSLER, LLP a/k/a
                                           PRESSLER and PRESSLER, LLP**

**Address for service:**                   Mitchell L. Williamson, Esq.
                                           Pressler & Pressler
                                           7 Entin Road, Parsippany, NJ 07054
                                           **(VIA ELECTRONIC MAIL)**

MIDDLESEX VICINAGE CIVIL DIVISION
P O BOX 2633
56 PATERSON STREET
NEW BRUNSWICK    NJ 08903-2633

                              TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (732) 519-3728
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:   AUGUST 12, 2014
                    RE:     POLITI ANDREW VS PRESSLER & PRESSLER LLP
                    DOCKET: MID L -004880 14

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.

     DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.

     THE MANAGING JUDGE ASSIGNED IS:  HON JAMIE D. HAPPAS

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      002
AT:  (732) 519-3737 EXT 3737.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:

                         ATT: ANDREW F. WOLF
                         WOLF LAW FIRM LLC
                         1520 US HIGHWAY 130
                         SUITE 101
                         NORTH BRUNSWICK  NJ 08902-3145

JUMPAT7

# CIVIL CASE INFORMATION STATEMENT

### (CIS)

Use for initial Law Division-Civil Part pleadings (not motions) under R. 4:5-1
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.

| FOR USE BY CLERK'S OFFICE ONLY | |
|---|---|
| PAYMENT TYPE: ☐ CK  ☐ CG  ☐ CA | |
| CHG/CHK NO. | |
| AMOUNT: | |
| OVERPAYMENT: | |
| BATCH NUMBER: | |

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Daniel I. Rubin, Esq.– NJ Attorney ID No. 015552005 | **(732) 545-7900** | **MIDDLESEX** |

| FIRM NAME (If Applicable) | DOCKET NUMBER |
|---|---|
| **The Wolf Law Firm, LLC** | MID-L- 4880-14 |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| **1520 U.S. Highway 130, Suite 101**<br>**North Brunswick, New Jersey 08902** | **Class Action Complaint** |
| | JURY DEMAND: ☒ Yes ☐ No |

| NAME OF PARTY (e.g. John Doe, Plaintiff)<br>**Plaintiff, Andrew Politi** | CAPTION<br>**ANDREW POLITI, on behalf of himself and others similarly situated v. PRESSLER & PRESSLER, LLP a/k/a PERSSLER and PRESSLER, LLP** |
|---|---|

| CASE TYPE NUMBER<br>**508   COMPLEX COMMERCIAL** | HURRICANE SANDY RELATED?<br>☐ Yes  ☒ No | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES  ☒ NO<br>IF YOU HAVE CHECKED "YES", SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|---|
| RELATED CASES PENDING ☐ YES  ☒ NO | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)? ☐ YES  ☒ NO | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN<br>☐ NONE  ☒ UNKNOWN |

THE INFORMATION PROVIDED BELOW CANNOT BE INTRODUCED INTO EVIDENCE

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

A. DO PARTIES HAVE A CURRENT,    IF YES, WHAT    ☐ EMPLOYER-EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain)
PAST OR RECURRENT    RELATIONSHIP?    ☐ FAMILIAL    ☐ BUSINESS
RELATIONSHIP? ☐ YES ☒ NO

B. DOES THE STATUTE GOVERNING THIS
CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ☒ YES    ☐ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT TO OR ACCELERATED DISPOSITION.

**This is a putative class action. Single-judge case management and expanded discovery are appropriate because of the inherent complexity involved in determining class certification, providing class notice, and adjudicating the claims on a class-wide basis.**

DO YOU OR YOUR CLIENT NEED ANY DISABILITY
ACCOMMODATIONS? ☐ YES ☒ NO    IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION

WILL AN INTERPRETER BE NEEDED? ☐ YES ☒ NO    IF YES, FOR WHAT LANGUAGE:

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE

*Dan Rubin*

Effective 08-19-2013, CN 10517-English

**Side 2**

# CIVIL CASE INFORMATION STATEMENT
### (CIS)



Use for initial pleadings (not motions) under R. 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**

| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (including declaratory judgment actions) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM (coverage issues only) |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (summary action) |
| 999 | OTHER (briefly describe nature of action) |

**Track II - 300 days' discovery**

| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603N | AUTO NEGLIGENCE -- PERSONAL INJURY (non-verbal threshold) |
| 603Y | AUTO NEGLIGENCE -- PERSONAL INJURY (verbal threshold) |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE -- PROPERTY DAMAGE |
| 621 | UM or UIM CLAIM (includes bodily injury) |
| 699 | TORT -- OTHER |

**Track III - 450 days' discovery**

| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER/CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

**Track IV - Active Case Management by Individual Judge/450 days' discovery**

| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 620 | FALSE CLAIMS ACT |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

**Multicounty Litigation (Track IV)**

| | | | |
|---|---|---|---|
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | 288 | PRUDENTIAL TORT LITIGATION |
| 271 | ACCUTANE/ISOTRETINOIN | 289 | REGLAN |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION |
| 278 | ZOMETA/AREDIA | 291 | PELVIC MESH/GYNECARE |
| 279 | GADOLINIUM | 292 | PELVIC MESH/BARD |
| 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 293 | DEPUY ASR HIP IMPLANT LITIGATION |
| 282 | FOSAMAX | 295 | ALLODERM REGENERATIVE TISSUE MATRIX |
| 284 | NUVARING | 296 | STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 286 | LEVAQUIN | 601 | ASBESTOS |
| 287 | YAZ/YASMIN/OCELLA | 623 | PROPECIA |

**If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."**

Please check off each applicable category:

☒ Putative Class Action          ☐ Title 59

Effective 08-19-2013, CN 10517-English

Daniel I. Rubin, Esq. – NJ Attorney ID No. 015552005
THE WOLF LAW FIRM, LLC
1520 U.S. Highway 130 - Suite 101
North Brunswick, NJ 08902
Tel. 732-545-7900; Fax 732-545-1030

Christopher J. McGinn, Esq. – NJ Attorney ID No. 40832001
THE LAW OFFICE OF CHRISTOPHER J. McGINN
75 Raritan Ave. - Suite 220
Highland Park, NJ 08904
Tel. 732-937-9400; Fax 800-931-2408
*Attorneys for Plaintiff and the putative class*

RECEIVED AND FILED
2014 AUG 12  A 10: 57
CIVIL OFFICE
MIDDLESEX VICINAGE

|  |  |
|---|---|
| ANDREW POLITI, on behalf of himself and others similarly situated, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MIDDLESEX COUNTY |
| Plaintiffs, | Docket No.: MID-L-4880-14 |
|  | CIVIL ACTION |
| v. | |
| PRESSLER & PRESSLER, LLP a/k/a PRESSLER AND PRESSLER, LLP, | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| Defendants. | |

## NATURE OF THE ACTION

1.  Plaintiff brings this action on behalf of himself and others similarly situated against Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* (hereinafter the "FDCPA").

2.  As described more fully below, Defendant violated the FDCPA by sending debt collection letters to Plaintiff and other New Jersey consumers on law firm letterhead without an attorney first exercising professional judgment by independently evaluating collection demands and determining that proceedings to enforce collection are warranted. Since a New Jersey law firm is required to conduct such due diligence, utilizing law firm letterhead created the impression that meaningful attorney involvement had taken place

when it had not.  Moreover, by sending collection letters on law firm letterhead without meaningful attorney involvement, Defendant effectively functioned as a non-attorney collection agency, and thereby misrepresented its ability to collect Plaintiff's alleged debt under New Jersey law.

3.  In these same letters, Defendant also stated that the creditor was required to report the alleged debts of Plaintiff and those similarly situated to the Internal Revenue Service in the context of a settlement offer.  However, Defendant failed to identify the common exceptions to such IRS reporting requirements that would apply to the vast majority of debtors receiving the letters, including but not limited to the settlement of a disputed debt.

4.  Defendant's letters to Plaintiff and those similarly situated further sought to collect on debts that Defendant was barred from enforcing under the applicable statute of limitations, but the letters failed to notify Plaintiff and those similarly situated that the underlying debt was time-barred.

5.  Plaintiff brings claims on behalf of himself and other similarly situated New Jersey consumers sent a letter by Defendant the same or similar to the debt collection letter received by Plaintiff concerning a Chase Bank USA, N.A. account during the applicable limitations period.

## PARTIES

6.  Plaintiff Andrew Politi resides in East Brunswick, New Jersey.

7.  Defendant Pressler & Pressler, LLP *a/k/a* Pressler and Pressler, LLP (hereinafter "Defendant" or "Pressler") is a law firm with a principal place of business office in Parsippany, New Jersey, which regularly attempts to collect debts alleged to be due to another.

## JURISDICTION AND VENUE

8.   This Court has jurisdiction over this matter alleging violations of the FDCPA, 15 U.S.C. §1692 *et seq.* pursuant to 15 U.S.C. §1692k(d).

9.   Venue is proper in Middlesex County because it is the location of Plaintiff's place of residence.

## FACTUAL ALLEGATIONS

10.   Plaintiff and others similarly situated are natural persons allegedly obligated to pay a debt incurred primarily for personal, family or household purposes.

11.   Defendant is a limited liability partnership engaged in the practice of law.

12.   Defendant regularly collects and/or attempts to collect debts that were incurred primarily for personal, family or household purposes, owed, due and/or asserted to be owed or due to another.

13.   The debts that Defendant regularly collects and/or attempts to collect were incurred by Plaintiff and others similarly situated primarily for personal, family and/or household purposes.

14.   Defendant regularly uses the mail, telephone or other instruments of interstate commerce in its collection of and/or attempts to collect debts.

15.   On or about May 2, 2014 Defendant sent a letter to Plaintiff, a copy of which is attached as **Exhibit A** (the "Pressler Letter").

16.   Plaintiff received the Pressler Letter.

17.   The Pressler Letter was printed on Defendant's law firm letterhead, and contains the names of 24 attorneys.

18.   The Pressler Letter is unsigned and does not indicate the name of the person who sent the letter.

19.     The Pressler Letter states that the alleged debt was from a Chase Bank USA, N.A. ("Chase") account that was now owned by Midland Funding LLC. ("Midland").

20.     The Pressler Letter contains the following provisions:

> The amount claimed by the creditor is now $5,833.23.  If you can make a payment of $5,249.91, 90% of the claimed balance by Tuesday, May 20, 2014, it will be accepted as settlement in full, a savings to you of $583.32.

> This will satisfy the debt the creditor is seeking. Proof that the debt has been paid will be sent to you. If you are unable to pay the 90%, we can accept $1,458.31 down (25% of the claimed balance) and enter into acceptable arrangements on the remaining 75% when you call this office.

> Whenever $600.00 or more is forgiven as a result of settling a debt for less than the balance owed, the creditor may be required to report the amount forgiven to the Internal Revenue Service on a 1099C form, a copy of which would be mailed to you by the creditor. If you are uncertain of the legal or tax consequences, we encourage you to consult your legal or tax advisor.

21.     The Pressler Letter was prepared and sent by a person or persons who are not attorneys.

22.     At the time Defendant sent the Pressler Letter to Plaintiff, Pressler utilized the following procedures[1] before sending a collection letter on behalf of Midland:

   a.  Pressler received a transmission from Midland of information concerning Plaintiff consisting essentially of Plaintiff's name, address and social security number, the amount of the outstanding balance, the annual percentage rate, if applicable, other charges and fees, closing dates of the billing cycle, the date the account was opened, and the dates of any recent payments.

   b.  Pressler then subjected this information to a series of reviews and internal "scrubs" by Pressler's computer system.  First, the "New Claims" department, which included no attorneys, reviews the data.  Then, Pressler's outside vendor examines the data followed by Pressler's own computer examination of the data.

   c.  Pressler then imports information into a form collection letter, which, after a final review for accuracy by a non-attorney, is sent to the alleged debtor.

23.     Prior to sending the Pressler Letter, no Pressler attorney exercised professional judgment

---

[1] These procedures are detailed in the court's opinion in the matter of Bock v. Pressler and Pressler, LLP, Case Number 11-7593, United States District Court for the District of New Jersey. A copy of this opinion is attached as **Exhibit B**.

by independently evaluating the collection demands and determining that sending a collection letter was warranted.

24. Defendant permitted its non-lawyer staff to send the Pressler Letter that no attorney had personally reviewed under the professional standards required by New Jersey lawyers.

25. Prior to sending the Pressler Letter, no Pressler attorney personally reviewed any agreement between Chase and Plaintiff or any other documents related to the alleged debt.

26. Prior to sending the Pressler Letter, no Pressler attorney personally reviewed any agreement between Chase and Midland related to the alleged debt.

27. Prior to sending the Pressler Letter, no attorney independently evaluated the claim that Plaintiff owed Chase a debt and/or the amount of the alleged debt.

28. By sending the Pressler Letter from a New Jersey law firm on law firm letterhead, an implication was created that the Pressler Letter had been reviewed and/or sent at the direction of an attorney.

29. By sending the Pressler Letter from a New Jersey law firm on law firm letterhead, an implication was created that an attorney had determined the accuracy of the alleged debt and that efforts to enforce collection were warranted.

30. Defendant used the same procedures in sending the Pressler Letter as it used in sending the same and/or similar letters to numerous other New Jersey consumers.

31. The Chase credit card accounts of Plaintiff and those similarly situated were issued in the State of Delaware, which applies a three-year statute of limitations for claims based on breach of contract. *See* 10 Del. C. § 8106.

32. At the time Defendant sent its letters to Plaintiff and those similarly situated, the three-year statute of limitations applicable to the Chase accounts upon which Defendant sought payment had expired.

33.     Defendant's letters to Plaintiff and those similarly situated did not disclose that the debts upon which Defendant sought to collect were time-barred and unenforceable.

34.     In the one year period before this Complaint was filed, Defendant sent letters the same or similar to the Pressler Letter to numerous New Jersey residents in an attempt to collect a debt on behalf of Chase.

35.     During the time that the Pressler letter was sent, Defendant permitted its staff to send collection letters without an attorney individually reviewing the file, making an appropriate inquiry, and exercising professional judgment.

36.     During the time that the Pressler letter was sent, Defendant assisted its non-attorney staff in the unauthorized practice of law and engaged in deceitful conduct.

## CLASS ALLEGATIONS

37.     This action is brought and may properly proceed as a class action, pursuant to the provisions of Rule 4:32 of the New Jersey Court Rules.  Plaintiff brings this action on behalf of itself and others similarly situated and seeks certification of a Class and a Subclass initially defined as follows:

> THE CLASS:
>
> All New Jersey residents to whom Defendant, since the day one year prior to the day this Complaint is filed, sent a collection letter seeking to collect a debt allegedly owed to Chase Bank USA, N.A. on law firm letterhead that: a) was not signed by an attorney; and/or b) contained the same or similarly language as the May 2, 2014 letter received by Plaintiff.
>
> THE SUBCLASS:
>
> All members of the Class for whom the statute of limitations on the alleged Chase debt had expired at the time Defendant sent its collection letter.

38.     The Class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

39.     There are questions of law and/or fact common to the members of the Class that predominate over questions affecting only individuals. These common questions include but are not limited to:

    a.    Whether Defendant is a debt collector under the FDCPA.

    b.    Whether the unsigned debt collection letter on law firm letterhead created the impression in the mind of the least sophisticated consumer that an attorney had reviewed the letter, and made an impression of legal validity not typically imputed to the actions of a lay debt collector;

    c.    Whether Defendant's practice of sending collection letters on law firm letterhead when no attorney reviewed the file, made appropriate inquiry, or exercised professional judgment constitutes engagement in the lay collection business;

    d.    Whether Defendant's engagement in the lay collection business constitutes a misrepresentation of the ability to collect a debt under New Jersey law;

    e.    Whether Defendant misrepresented the creditor's obligation to report the settlement of a disputed debt to the Internal Revenue Service;

    f.    Whether Defendant failed to identify the common exceptions to Internal Revenue Service reporting requirements and related tax liability, including but not limited to the settlement of a disputed debt;

    g.    Whether Defendant sought to collect debts from Plaintiff and those similarly situated for which the statute of limitations governing collection of the debt had expired;

    h.    Whether Defendant had an obligation to disclose that the time-barred debts which it sought to collect were unenforceable;

    i.    Whether the above-referenced conduct by Defendant violated the FDCPA; and

    j.    What is the proper measure and appropriate statutory formula to be applied in determining the damages owed by Defendant to Plaintiff and the Class.

40.     Plaintiff's claims are typical of the claims of the members of the Class which he represents because all such claims arise out of the same policies, practices and/or conduct, and the same or similar documents used by Defendant in its dealings with Plaintiff.

41. Plaintiff has no interests antagonistic to those of the Class.

42. The Class, of which Plaintiff is a member, is readily identifiable.

43. Plaintiff will fairly and adequately protect the interests of the Class, and has retained competent counsel experienced in the prosecution of consumer litigation.

44. Plaintiff's attorneys have significant experience and expertise in litigating consumer class actions, including, but not limited to, actions brought under the FDCPA.

45. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. While the economic damages suffered by the individual members of the Class are significant, the amount is modest compared to the expense and burden of individual litigation.

46. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members.

47. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendant in this action, or the prosecution of separate actions by individual members of the Class would create the risk that adjudications with respect to individual members of the Class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

48. Defendant has acted, or refused to act, on grounds generally applicable to Plaintiff and all class members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

49. A class action will cause an orderly and expeditious administration of the claims of the

Class, and will foster economies of time, effort and expense.

50.     Plaintiff does not anticipate any difficulty in the management of this litigation.

## CLASS ACTION CLAIMS

### FIRST COUNT
### (FDCPA Violation – Unauthorized Practice of Law Claim)

51.     Plaintiff, on behalf of himself and others similarly situated, re-asserts and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth at length here.

52.     Plaintiff and others similarly situated are "consumers" as defined at 15 U.S.C. §1692a(3).

53.     The debts which Plaintiff and others similarly situated were allegedly obligated to pay are "debts" as defined at 15 U.S.C. §1692a(5), and are therefore subject to the provisions and requirements of the FDCPA.

54.     Defendant is a "debt collector" as defined at 15 U.S.C. §1692a(6).

55.     Defendant has violated 15 U.S.C. §1692, *et seq.* of the FDCPA in connection with its collection attempts against Plaintiff and others similarly situated.

56.     By sending letters on firm letterhead without first having an attorney individually review the file, make the appropriate inquiry, and exercise professional judgment, Defendant violated the following provisions of the FDCPA:

   a.     15 U.S.C. §1692e and §1692e(10), by using any false, deceptive or misleading representation or means in connection with the collection of a debt from Plaintiff and others similarly situated;

   b.     15 U.S.C. §1692e(2)(A), by misrepresenting the character, amount or legal status of any alleged debts owed by Plaintiff and others similarly situated;

   c.     15 U.S.C. § 1692e(3), by misrepresenting or falsely implying that the letters sent

to Plaintiff and those similarly situated were from an attorney, when no attorney reviewed the letters;

d.    15 U.S.C. §1692f by using unfair and unconscionable means to collect or attempt to collect a debt from Plaintiff and others similarly situated;

e.    15 U.S.C. §1692f(1) by collecting or attempting to collect an amount from Plaintiff and others similarly situated in a manner that is prohibited by New Jersey law; and

f.    15 U.S.C. §1692n, by failing to comply with the laws of the State of New Jersey with respect to debt collection practices.

53. As a result of Defendant's violations of the FDCPA, Plaintiff and those similarly situated seek statutory damages.

### SECOND COUNT
### (FDCPA Violation – 1099 Claim)

57.    Plaintiff, on behalf of himself and others similarly situated, re-asserts and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth at length here.

58.    Defendant has violated 15 U.S.C. §1692, *et seq.* of the FDCPA in connection with its collection attempts against Plaintiff and others similarly situated.

59.    By misrepresenting in its letters to Plaintiff and those similarly situated that the creditor was required to report the settlement of a disputed debt to the Internal Revenue Service, and failing to identify the common exceptions to IRS reporting requirements that would apply to the settlement of disputed debts, Defendant violated:

a.    15 U.S.C. §1692e and §1692e(10), by using a false, deceptive or misleading representation in its efforts to collect alleged debts from Plaintiff and others

similarly situated;

b.   15 U.S.C. §1692e(2)(A), by misrepresenting the legal status of any alleged debts owed by Plaintiff and others similarly situated;

c.   15 U.S.C. §1692e(5), by threatening to take an action that was not intended to be taken, specifically reporting the settlement of a disputed debt to the Internal Revenue Service;

d.   15 U.S.C. §1692n by failing to comply with the laws of the State of New Jersey with respect to debt collection practices; and

e.   15 U.S.C. §1692f by using unfair and unconscionable means to collect or attempt to collect a debt from Plaintiff and others similarly situated.

## THIRD COUNT
### (FDCPA Violation – Attempts to Collect a Time-Barred Debt)

60.   Plaintiff, on behalf of himself and others similarly situated, re-asserts and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth at length here.

61.   Defendant has violated 15 U.S.C. §1692, *et seq.* of the FDCPA in connection with its collection attempts against Plaintiff and others similarly situated.

62.   By attempting to collect a debt from Plaintiff and those similarly situated after the applicable statute of limitations had expired, and failing to include a notice in its letters to Plaintiff and those similarly situated that the underlying debt was time-barred and unenforceable, Defendant violated:

a.   15 U.S.C. §1692e and §1692e(10), by using a false, deceptive or misleading representation in its efforts to collect alleged debts from Plaintiff and others similarly situated;

b.   15 U.S.C. §1692e(2)(A), by misrepresenting the legal status of any alleged debts owed by Plaintiff and others similarly situated;

c.   15 U.S.C. §1692e(5), by threatening to take an action that could not be taken or that was not intended to be taken, specifically the implied threat of a civil lawsuit to collect a time-barred debt; and

d.   15 U.S.C. §1692f by using unfair and unconscionable means to collect or attempt to collect a debt from Plaintiff and others similarly situated.

**WHEREFORE**, Plaintiff, on behalf of himself and others similarly situated, demands judgment against the Defendant as follows:

a.   An order certifying this matter as a class action under Rule 4:32-1(b)(3), appointing Plaintiff as class representative and his attorneys as class counsel;

b.   A declaratory judgment that Defendant violated the FDCPA as alleged.

c.   A judgment for maximum statutory damages under the FDCPA and all other applicable statutes;

d.   A judgment for reasonable attorney's fees and costs of suit in connection with this action, pursuant to 15 U.S.C. §1692 k(a)(3;

e.   A judgment for pre-judgment and/or post-judgment interest; and

f.   A judgment for such other and further relief as Plaintiff and others similarly situated may be entitled or as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Andrew R. Wolf, Esq. is hereby designated as trial counsel for Plaintiff in the above matter.

## CERTIFICATION

Pursuant to <u>Rule</u> 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding. I further certify that I know of no other party who should be joined in the action at this time.

Daniel I. Rubin, Esq. – NJ Attorney ID No. 015552005
THE WOLF LAW FIRM, LLC
1520 U.S. Highway 130 - Suite 101
North Brunswick, NJ 08902
Tel. 732-545-7900
Fax 732-545-1030
*Attorneys for Plaintiff*

Dated: August 11, 2014

EXHIBIT A

*Politi vs. Pressler & Pressler*
Docket No.:   TO BE SUPPLIED

MAURICE H. PRESSLER(1930-2002)
SHELDON H. PRESSLER
-------
GERARD J. FELT
STEVEN P. McCABE
LAWRENCE J. MCDERMOTT, JR.
DAVID B. WARSHAW (NJ,NY & MA)
-------
MITCHELL L. WILLIAMSON (NJ & NY)
FRANCIS X. GRIMES (NJ & PA)
DARREN H. TANAKA (NJ & NY)
JOANNE L. D'AURIZIO (NJ, NY, DC & FL)
EDWARD STOCK (PA)

**PRESSLER AND PRESSLER, L.L.P.**
COUNSELLORS AT LAW
7 Entin Rd.
Parsippany, NJ 07054-5020
Off: 1-973-753-5100
Fax: 1-973-753-5353
-----------
NY Office              PA Office
305 Broadway
9th Floor            804 West Avenue
New York, NY 10007   Jenkintown, PA 19046
Off: (516)222-7929   Off: 1-215-576-1900
Fax: (973)753-5353   Fax: 1-215-576-7299
Reply to [X] NJ Office [ ] NY Office [ ] PA Office

GERMAN ROZENCRANC (NJ & NY)      DALE L. GELBER
MICHAEL J. PETERS (NJ & NY)      RITA E. AYOUB
GINA M. LO BUE (NJ & NY)         STEVEN A. LANG
MICHELLE LIEBNER (NJ & PA)       ERICA L. FIELDS
CHRISTOPHER P. ODOGBILI          DARYL J. KIPNIS
RALPH GULKO (NJ, NY & PA)        FAITH E. SNYDER
CRAIG S. STILLER (NY & PA)
NICHOLAS J. MADONIA (NJ & NY)

--------------------------------
OFFICE HOURS:
Monday-Thursday: 8am-9pm
Friday: 8am-7pm
Saturday: 9am-2pm

〡|〢·〡〢·〢〡〢〢〡〢〡〡〢〢〡〢·〡〢·〡〢·〡〢〢〡〢〡·〡〢〢〢〡〢·〢〡〢·〡〡

05/02/14

ANDREW POLITI
REDACTED

P&P FILE #: P167313

Dear ANDREW POLITI

You are hereby offered a significant savings on your CHASE BANK USA, N.A. account 447948050616469 now owned by MIDLAND FUNDING LLC . The amount claimed by the creditor is now $5,833.23 . If you can make a payment of $5,249.91 , 90 % of the claimed balance by Tuesday, May 20, 2014 , it will be accepted as settlement in full, a savings to you of $583.32 .

This will satisfy the debt the creditor is seeking. Proof that the debt has been paid will be sent to you. If you are unable to pay the 90 %, we can accept $1,458.31 down (25 % of the claimed balance) and enter into acceptable arrangements on the remaining 75 % when you call this office.

Whenever $600.00 or more is forgiven as a result of settling a debt for less than the balance owed, the creditor may be required to report the amount forgiven to the Internal Revenue Service on a 1099C form, a copy of which would be mailed to you by the creditor. If you are uncertain of the legal or tax consequences, we encourage you to consult your legal or tax advisor.

If there are any special circumstances that need to be considered or you wish to pay by phone, please call the office toll free at 1-888-312-8600 Ext 5106 . Mail your check payable to MIDLAND FUNDING LLC , write file number P167313 and enclose in the postage paid envelope or complete the credit card authorization form at the bottom of this letter. You must act swiftly to accept these offers. **Please Note:** After May 20, 2014 this offer may be null and void. We are not obligated to renew this offer. This offer does not apply to payments or arrangements to pay made prior to this notification.

For faster processing, pay by phone using a check, credit card (MasterCard, Visa or American Express) or debit card with a Visa or MasterCard logo. Payments can also be made on our website www.paypressler.com, or by Western Union. Please call them at 1-800-325-6000 for the nearest agent and mention code city: ( Pressler, State: NJ).

Name as it appears on Credit Card_____/Street # & Zip_____
Expires ____/____   Credit Card #_____/Security Code_____
Amount $_____   Signature _____·_____

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

# EXHIBIT B

*Politi vs. Pressler & Pressler*
Docket No.:   TO BE SUPPLIED

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **DANIEL BOCK, JR.,** | : | Civ. No. 11-7593 (KM)(MCA) |
| **Plaintiff,** | : | |
| | : | **OPINION** |
| **v.** | : | |
| **PRESSLER AND PRESSLER, LLP,** | : | |
| **Defendant.** | : | |

**MCNULTY, U.S.D.J.:**

    The Plaintiff, Daniel Bock, Jr., ran up charges on a credit card and owed money to the issuer bank. His debt was purchased by Midland Funding LLC ("Midland"), which in turn engaged Defendant Pressler and Pressler ("Pressler") to collect the debt. Pressler sent Bock a collection letter, and then, on Midland's behalf, filed a complaint against Bock in the Superior Court of New Jersey. That state action was settled, but while it was pending, Bock brought this federal court action against Pressler. Here, Bock alleges that Pressler made a false or misleading representation in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, by filing the state complaint without meaningful review by an attorney. Now before the Court are the parties' cross-motions for summary judgment.

    FDCPA prohibits a broad range of false, misleading or overreaching tactics in connection with the collection of a debt. *See generally* 15 U.S.C. § 1692 *et seq.*; *McLaughlin v. Phelan Hallinan & Schmeig, LLP,* No. 13-2015 (3d Cir. June 26, 2014). Case law establishes that it is false and misleading, within the meaning of FDCPA, for an attorney to send a debt collection letter without having meaningfully reviewed the case. *See Lesher v. Law Offices of Mitchell N. Kay, PC,* 650 F.3d 993, 1001-1003 (3d Cir. 2011), *cert. denied,* 132 S. Ct. 1143 (2012). One issue in this case is whether a civil complaint filed in court, like a collection letter, is governed by the FDCPA. Although there are cogent policy arguments for limiting the scope of the FDCPA, I am constrained by the language of the statute, as interpreted by the Third Circuit and other U.S. Courts of Appeals, to hold that a complaint is not exempt from its scope.

    The process by which Pressler prepares complaints almost entirely involves automation and non-attorney personnel. There is nothing wrong with

that; the FDCPA does not mandate drudgery or enshrine outmoded business methods. The state court complaint filed in the state action here, however, was reviewed by an attorney for approximately four seconds. The case law is sparse, and it is possible for reasonable people to disagree as to what constitutes reasonable attorney review. But whatever reasonable attorney review may be, a four-second scan is not it.

Applying the law to the substantially undisputed facts, I find that Pressler violated the FDCPA when it signed, filed, and served a state-court complaint against Bock without substantial attorney review.

## BACKGROUND

### 1. Procedural Background

Pressler is a law firm based in Parsippany, New Jersey. It specializes in collection law and is a debt collector within the meaning of FDCPA.[1] Pressler was retained by a creditor, Midland, to pursue a debt owed by Bock that allegedly exceeded $8,021.57.

Pressler opened an electronic file concerning Bock's debt on September 12, 2011. (Pressler's L. Civ. R. 56.1 Statement at ¶ 2). Then, on September 15, 2011, it mailed an initial collection letter to Bock. (*Id.* at ¶ 3). The letter requested that he pay the $8,021.57. The letter, although it was on attorney letterhead, contained a disclaimer: "As of this time, no attorney with this firm has personally reviewed the particular circumstances of your account." Bock did not respond and did not remit any funds. (Certification of Mitchell L. Williamson, Esq. at Ex. A).

On October 21, 2011, Pressler commenced a collection action against Bock by filing a complaint in the Superior Court of New Jersey, Special Civil Part.[2] (Pressler's Statement at ¶ 4). The complaint was signed on behalf of Pressler by Ralph Gulko, Esq., "the attorney who reviewed, read, and signed the complaint." (*Id.* at ¶ 4-5). That one-page complaint states:

> It [*i.e.*, the plaintiff, Midland Funding LLC] is now the owner of the defendant(s) HSBC BANK NEVADA, N.A.[3]

---

[1] *See Heintz v. Jenkins*, 514 U.S. 291, 294 (1995); 15 U.S.C. § 1692a(6).

[2] The jurisdiction of Special Civil Part, a subdivision of the Superior Court, is limited to certain cases in which the amount in controversy does not exceed $15,000. N.J. Ct. R. 6:1-2(a).

[3] HSBC Bank Nevada, N.A., a division of HSBC Bank, is Midland's predecessor in interest. Pressler would not have meant to signify that HSBC Bank was a defendant (it is not); no doubt the possessive "defendant's" (rather than "defendants(s)") was intended. Pressler's form complaint, which does not even require the attorney to tailor

2

account number 5458001561298245 which is now in default. There is due plaintiff from the defendant(s) DANIEL BOCK JR the sum of $8,021.57 plus interest from 05/31/2010 to 10/20/2011 in the amount of $102.98 for a total of $8,124.55.

WHEREFORE, plaintiff demands judgment for the sum of $8,124.55 plus accruing interest to the date of judgment plus costs.

(Williamson Cert. at Ex. B).

That form complaint generally refers to "an account" by number and a corporate bank name. In fact it is a MasterCard revolving credit account, although that fact cannot be gleaned from the complaint.[4]

Bock answered the complaint on November 18, 2011, stating that he was not aware of the alleged bill and wanted the defendant to furnish evidence of the indebtedness. (Williamson Cert. at Ex. C). On February 24, 2012, the scheduled trial date, Bock and Midland entered into a written agreement to settle the action for $3,000. (Pressler's Statement at ¶¶ 13-15; Williamson Cert. Ex. E). That settlement required an initial payment of $2000, with smaller monthly payments thereafter through September 2012. *Id.* The terms of the settlement set forth that "[u]pon payment, the parties release each other from liability covering the matter in this dispute." *Id.* Bock paid the amounts due under the settlement agreement.[5]

On October 30, 2013, while the state court action was still pending, Bock filed this federal-court action against Pressler, alleging a violation of FDCPA. (Complaint [ECF No. 1]). The federal complaint alleges that "[b]y signing the [state court] Collection Complaint, Gulko certified that he read the Collection Complaint and that, 'to the best of his...knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,' 'the factual allegations have evidentiary support.'" (*Id.* at ¶ 36 (citing N.J.R.Ct. 1:4-8(a) and Fed. R. Civ. P. 11)). The complaint alleges that "Gulko signs so many complaints that it is either physically impossible or so highly improbabl[e] that he read the

---

the language to a case with single or multiple defendants, is likely to blame.

[4] Or from the collection letter. The letter does volunteer that, in payment of the overdue account, Pressler will accept "Visa/MasterCard and American Express"— which in itself might be confusing once the recipient figured out that the debt in question was a MasterCard bill.

[5] The release is illegibly signed by "Plaintiff's Attorney." I assume that a Pressler attorney signed in his or her capacity as representative of Midland, not with the intention of releasing the law firm from claims against itself. At any rate, Defendant Pressler does not claim that this action is barred by the release and settlement of the state court collection action.

Collection Complaint or made a sufficient inquiry from which to conclude that the factual allegations have evidentiary support. Therefore, Ralph Gulko on behalf of PRESSLER made false representations to collect or attempt to collect the Debt." (*Id.* at ¶ 37). The state court complaint was therefore alleged to be false and misleading within the meaning of the FDCPA.

### 2. *Pressler's Practices and Review of Midland's Claim Against Bock*

The facts surrounding Pressler's preparation of Midland's complaint against Bock are critical, but virtually undisputed. I set them forth here, before turning to the contested legal questions on which this matter hinges.

Midland, a client of Pressler's since 2003, electronically transmitted information concerning its claim against Bock using specialized software. It has done the same with all of the cases handled on its behalf by Pressler over the last nine years. (Affidavit of Gerald J. Felt, Esq. at ¶¶ 9-11). Pressler then uploaded and electronically stored that information on its computer system. (*Id.* at ¶ 11). The basic information that Pressler receives from Midland (and other clients) consists essentially of the debtor's name, address, and social security number, the outstanding balance, annual percentage rate, other charges and fees, closing dates of the billing cycle, the date the account was opened, and the dates of recent payments. (*Id.* at ¶ 13).

The information is then subjected to a series of reviews by non-attorneys and internal "scrubs" by Pressler's computer system. First, the "New Claims Department," which does not include any attorneys, essentially reviews the information for completeness, *i.e.*, to ensure that none of the minimum necessary information is missing. (*Id.* at ¶ 14). Then, Pressler's outside vendor runs a computerized scrub to make sure that the debtor is not dead, bankrupt, or lacking a verifiable address, and to see that there are no preexisting claims against him or her in Pressler's system. (*Id.* at ¶¶ 15-16). If the claim file survives this scrub, it proceeds to a second scrub in-house at Pressler. This computerized second scrub reviews much of the same information, and further makes sure that Pressler's system contains no information indicating that the debtor no longer owes a balance or has retained an attorney, that the claim is not based on a 'bounced' check, and that the defendant is not in a state where Pressler does not practice law. (*Id.* at 17). If the information survives this scrub, it is imported into a form collection letter, which, after a final review for accuracy by a member of Pressler's non-attorney staff, is sent to the debtor. (*Id.* at ¶ 18-20).

Thirty-five days pass. If the initial collection letter is not returned to Pressler, and Pressler has not received any repayment or made some arrangement with the debtor, Pressler then transfers the electronic information file to its "Approve for Suit Department." There, "dedicated employees," who are not attorneys but "are trained to review the new claim further to determine whether it should proceed through litigation," are "tasked with checking and verifying" the same basic information about the debt. In addition, they check

4

whether the statute of limitations has run, whether there is some unresolved "'dispute' code" (it is unclear what Pressler means by this), and whether the social security number on record is accurate. (*Id.* at ¶ 20-22). The same employees make sure that the claim against the debtor fits within "certain guidelines and restrictions given to us by each of our respective clients (*e.g.,* no request for finance charge will be sought on a particular group of accounts)." (*Id.* at ¶ 23). Then, the "Summons and Complaint" team, which also includes no attorneys, verifies that an initial collection letter was sent, that Pressler has the correct home address of the defendant, that the defendant's address is in the New Jersey county in which the lawsuit will be brought, and that the suit is not barred by the statute of limitations, any bankruptcy, or a "'dispute' code." (*Id.* at ¶ 25).

If satisfied with this review, the team generates the actual Summons and Complaint by populating standard forms with the information on file. (*Id.*). It then electronically queues all of the Summonses and Complaints it has generated for attorney review. (*Id.* at ¶ 26). The attorney at Pressler who is responsible for approving complaints for filing in New Jersey is Ralph Gulko, Esq. Mr. Gulko reviewed and approved the complaint against Bock. (*Id.*).

Each day, Gulko goes through the electronic "feed" of all the complaints prepared by the Summons and Complaint team. (*Id.* at ¶ 27). On average, he reviews 300 to 400 complaints per day; some days, he has reviewed as many as 1,000. (Deposition Testimony of Ralph Gulko Esq. at 92:24 to 94:5, Ex. P-9 to Declaration of Phillip D. Stern, Esq. [ECF No. 34-3]). *Via* the feed, each draft complaint appears on one of Gulko's two computer monitors. On the other monitor appears a summary of basic information, like the debtor's name, address, and outstanding debt, as well as a 'note set' in which any red flags (i.e., for a bankruptcy) placed by previous scrubs and reviews would appear. (*Id.* at 28:16 to 32:6; Felt Aff. at ¶¶ 27-28). Gulko's review is intended to ensure that the complaint accurately reflects the basic data supplied by the client (name, address, amount of debt), whether 35 days have passed since the initial letter was sent, and whether Pressler's staff or computers have flagged the complaint for any reason, such as lack of valid home address, bankruptcy, payments received, or some other problem. (Affidavit of Ralph Gulko, Esq. at ¶¶ 5-6, 8; Felt Aff. at ¶¶ 27-29). Pressler admits that Gulko does not look at anything aside from the information on the second computer screen unless something is "unusual or incomplete or in any way peaks [*sic*] [his] interest." (Bock's Statement at ¶ 43; Pressler's Resp. Statement at ¶ 43; *see* Gulko Aff. at ¶¶ 5-9). If there are no red flags and he is satisfied with the accuracy of the populated information on the complaint, then Gulko types "GD" (for "good"), generating his electronic signature and transmitting the complaint to Pressler's "JEFIS Department" for electronic filing with the court. (Felt. Aff. at ¶ 30).[6]

---

[6] Pressler's computer system alerts the JEFIS department if anything like a bankruptcy, a duplicate claim, or an invalid address has arisen or become apparent

On October 20, 2011, Gulko's review and approval of the complaint against Bock occupied a total of four seconds. Computer records disclose that that was the period of time for which the electronic file containing the complaint against Bock and the previously-culled data (described *supra*) were open. (Gulko Aff. at ¶ 12). Gulko reviewed 673 complaints that day, approving 663 and rejecting 10. (*Id.*). Neither he nor any other attorney was involved with Midland's case against Bock in any way before his brief review of the pre-drafted complaint. (*See* Gulko Dep. Testimony at 26:14 to 27:12; Gulko Aff. at ¶ 9; Felt Aff. at ¶¶ 9-26).

By all accounts, neither Gulko nor any other member of Pressler's staff reviewed, or otherwise had knowledge of, the contract between Bock and the bank, including any choice of law, choice of venue, or dispute resolution clause governing disputes between Bock and his creditor. (Bock's Statement at ¶ 47; Pressler's Resp. Statement at ¶ 47). Nor did Gulko or anyone else at Pressler review the agreement by which Bock's original creditor allegedly assigned this debt to Pressler's client, Midland. (Bock's Statement at ¶ 50; Pressler's Resp. Statement at ¶ 50).

### THE PARTIES' CONTENTIONS

Currently before this Court are Pressler's motion for summary judgment dismissing the action [ECF No. 32] and Bock's motion for summary judgment on the issue of liability [ECF No. 34].

Bock argues that he has established a violation of 15 U.S.C. § 1692e, especially subsections (3) and (9). The evidence, he says, shows that the state court civil complaint against him purports to be attorney work product, but that no attorney was meaningfully involved in its review and preparation. That, in Bock's view, constitutes a misrepresentation or deception under FDCPA.[7] He points to Gulko's four-second review, the lack of any inquiry into firsthand evidence (especially the underlying agreement and assignment), and the sheer volume of complaints reviewed. These he cites as proof that Gulko did not complete the meaningful review required by the FDCPA for communications

---

before the complaint is actually filed with the court. (*Id.* at 31).

[7] The relevant sections of the statute are quoted at pp. 9-10, *infra*. Pressler argues that Bock has failed to plead a claim under subsection (9). But Bock sued under Section 1692e's general prohibition of "false, deceptive, or misleading representations or means in connection with the collection of any debt." (*See* Complaint [ECF No. 1] at ¶ 44.01) Subsection 9 is just one item on a non-exhaustive list of acts that violate Section 1692e's general prohibition. Pressler also argues that Bock's subsection (10) claim should be dismissed because it is a catch-all provision that depends on other violations. The argument is moot, as this opinion finds that Bock has established specific violations of Section 1692e and subsection 3. *Cf. Nielson v. Dickerson*, 307 F.3d 623, 639 (7th Cir. 2002 ("the violation of section 1692e(3) and (10) is inescapable.").

bearing an attorney's signature. Bock also asserts that review of basic information supplied by a client, without more, is an insufficient basis for the reasoned professional judgment required under the meaningful review doctrine.

Pressler argues that the FDCPA is not intended to incorporate by reference N.J.R.Ct. 1:4-8, Fed. R. Civ. P 11, or any Rule of Professional Conduct. At any rate, it says, any claim of such an ethical violation was waived when Bock did not send a "frivolous litigation letter" in the state case, but rather joined issue and settled the matter. Pressler expresses disagreement with the judge-made meaningful review rule, and claims that, at any rate, it was not violated here because the firm did not merely rent out its letterhead to a non-attorney debt collector. It also points to the separate section of the FDCPA which provides that a debt collector need not pre-verify or investigate a debt. It further argues that the allegations of the state complaint were not false, and that both Pressler and Gulko were meaningfully involved in preparing the complaint. Pressler stands by its methodology for preparing and reviewing complaints, characterizing consumer debt cases as simple, and its reliance on forms and computers sufficient under the circumstances. (Felt Aff. at ¶ 33). It states that "[d]ebt collection is a competitive business" and that Pressler's standardized methodology is its "secret sauce" for obtaining a competitive advantage. (*Id.* at ¶¶ 7-8).

I note a claim that is *not* asserted here. Although virtually all of the relevant case law deals with attorneys' collection letters, Bock does not assert here that Pressler's original debt collection letter was misleading, in violation of the FDCPA.[8] Such a claim would not pose some of the novel issues that arise from a

---

[8] The letter was sent on Pressler's law firm letterhead. Attached to Pressler's papers is a joint opinion of the New Jersey Committees on Professional Ethics and the Unauthorized Practice of Law. That Opinion states that, under FCDPA, a collection letter to a debtor may state that no lawyer has reviewed the file, and that a lawyer may thereby disclaim any action in a "lawyer capacity" and act "as a mere lay debt collector." That is a problematic proposition under current Third Circuit law. *See Lesher*, 650 F.3d at 1003 (giving no effect to similar disclaimer on the back of a letter, because it contradicts the message on the front of the letter that the law firm has been retained to collect the debt). *See* Discussion, Section C.1, *infra*.

The ethics opinion itself reaffirms this State's long-standing rule that to send such a letter on attorney letterhead is a violation of the New Jersey ethics rules:

> Since the UPL Committee issued Opinion 8 in 1972, it has been clear that lawyers who send collection letters are engaged in the practice of law. A lawyer cannot disclaim the fact that he or she is engaging in the practice of law when using law firm letterhead. A lawyer who has not reviewed the file, made appropriate inquiry, and exercised professional judgment has engaged in an incompetent and grossly negligent practice of law in violation of RPC 1.1(a). A lawyer who permits office staff, or a client, to send collection letters when the lawyer has not individually reviewed the

claim with respect to a state-court complaint. It may or may not be true that this federal court action was structured as a test case.[9] Be that as it may, absent indications of collusion (and none have come to my attention), the plaintiff is master of his case and may select the claims he wishes to assert.

## DISCUSSION

### A. Legal Standard on Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.,* 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania,* 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, (1986). "[W]ith

---

file, made appropriate inquiry, and exercised professional judgment, is assisting in unauthorized practice of law in violation of RPC 5.5(a)(2) and engaging in deceitful conduct in violation of RPC 8.4(c).

Joint Opinion, Committee on the Unauthorized Practice of Law (Op. No. 48) and Advisory Committee on Professional Ethics (Op. No. 725), at p. 5 (copy at Williamson Cert. Ex. H, [ECF No. 32-5]).

[9] The lawyer's responsibility for the integrity of pleadings in collection actions has been the subject of active concern at the regulatory level. Both the FTC and the Consumer Financial Protection Bureau ("CFPB") have taken an interest. *See* CFPB amicus brief filed in *Sykes v. Mel S. Harris & Assocs.,* No. 13-2742 (2d Cir.) (appeal from certification of class action in "sewer service" case), http://files.consumerfinance.gov/f/201403_cfpb_fair-debt-collection-practices-act.pdf (arguing that FDCPA applies to communications directed to court, as opposed to directly to debtor); FTC Report (July 2010), "Repairing A Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration," www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-bureau-consumer-protection-staff-report-repairing-broken-system-protecting/debtcollectionreport.pdf (*see* pp. iii-iv); FTC Workshop Report (Feb. 2009), "Collecting Consumer Debts: The Challenges of Change," www.ftc.gov/sites/default/files/documents/public_events/life-debt/dcwr.pdf (*see* section on collection litigation beginning at p. 55).

The question here is whether that general regulatory concern corresponds to a specific cause of action under the FDCPA based on insufficient attorney review of complaints.

respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial.").

When, as here, the parties file cross-motions for summary judgment, the governing standard "does not change." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468-69 (D.N.J. 2002) (citing *Weissman v. U.S.P.S.*, 19 F. Supp. 2d 254 (D.N.J.1998)). The court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (2009); *Williams v. Philadelphia Hous. Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir.1994). That one of the cross-motions is denied does not imply that the other must be granted. For each motion, "the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made" but does not "weigh the evidence or make credibility determinations" because "these tasks are left for the fact-finder." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (internal quotation and citations omitted).

### B. The Fair Debt Collection Practices Act (FDCPA)

Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The same section sets forth, in its 16 subsections, a non-exhaustive list of acts constituting "a violation of this section," including, in pertinent part:

> (3)   The false representation or implication that any individual is an attorney <u>or that any communication is from an attorney</u>.

> (9)   The use or distribution of any written communication...which creates a false impression as to its source, authorization, or approval.

> (10)  The use of any false representation or deceptive
> means to collection or attempt to collect any debt or to
> obtain information concerning a consumer.

*Id.* The courts construe Section 1692e broadly, to further the FDCPA's remedial purpose and goal of "eliminat[ing] abusive debt collection practices by debt collectors." *Lesher*, 650 F.3d at 997; 15 U.S.C. § 1692(e). In assessing communications to debtors, the courts adopt the perspective of the "least sophisticated debtor," so that the law protects the gullible as well as the shrewd. *Lesher* at 997; *accord McLaughlin v. Phelan Hallinan & Schmeig, LLP*, No. 13-2015, slip op. at 8 (3d Cir. June 26, 2014). That said, this framework "preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Id.* (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000) (internal quotation marks and citation omitted)).

As noted above, attorneys who, *inter alia,* litigate collection actions are debt collectors under the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) (citing 15 U.S.C. 1692a(6)); *FTC v. Check Investors, Inc.*, 502 F.3d 159, 173 n. 11 (3d Cir. 2007) (citing *Heintz* for proposition that FDCPA applies to the litigation activities of attorneys). "The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). As discussed further herein, a "communication" has been held to include a collection complaint filed in court and served on the debtor/defendant. *See generally Oppong v. First Union Mortg. Corp.*, 566 F. Supp. 2d 395, 400 (E.D. Pa. 2008), *aff'd*, 326 F. App'x 663, 666 (3d Cir. 2009).

### C. The Requirement That "Meaningful Attorney Involvement" Precede Communications By Attorneys

It is well established that "[o]ne cannot, consistent with the FDCPA, mislead the debtor regarding meaningful 'attorney' involvement in the debt collection process." *Lesher,* 650 F.3d at 1001 (quoting *Greco*, 412 F.3d at 364). It is a violation of Section 1692e for a debt collector to make what purports to be, but actually is not, a statement of an attorney in connection with the debt collection process. *See id.* at 1001-1003; *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364 (2d Cir. 2005); *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993).

#### 1. The *Lesher* "meaningful attorney involvement" rule and collection letters

The "meaningful attorney involvement" rule developed in cases where the debtor received a letter on law firm letterhead and signed by an attorney, despite the attorney having not reviewed the matter. *See Lesher*, 650 F.3d at 999 (summarizing the "leading case" on the issue, *Clomon*, 988 F.2d at 1316-1320). The courts agree that such a letter would tend "to give the debtor the false impression that the letters were communications from an attorney," when in fact

10

"they were not 'from' the attorney in any meaningful sense of the word." *Id*. Such a letter is therefore false or misleading within the meaning of FDCPA.

In *Lesher*, the defendant law firm sent collection letters to the plaintiff even though "no attorney with [the] firm ha[d] personally reviewed the particular circumstances" of the case. *Id*. at 996. The Court of Appeals for the Third Circuit affirmed summary judgment against the law firm, reasoning that the letter would cause a debtor to "reasonably believe that an attorney has reviewed his file and has determined that he is a candidate for legal action." *Id*. at 1002-1004 (finding violation of the general prohibition in Section 1692e).[10] The *Lesher* majority declared it a violation of Section 1692e for a collection letter to be misleadingly signed by an attorney and sent on attorney letterhead where the attorney or firm had not yet "acted in its legal capacity when it sent the letter[.]" *Id*. (reasoning that "it was misleading and deceptive for the Kay Law Firm to raise the specter of potential legal action by using its law firm title to collect a debt when the firm was not acting in its legal capacity when it sent the letters.").

The majority's holding in *Lesher* rested on cases from other circuits. These, although perhaps more receptive to the idea of a disclaimer, give additional content to the "meaningful attorney involvement" rule.

For example, in *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993), an attorney worked as general counsel for a debt collector named NCB. NCB sent a letter to plaintiff to collect a $9.42 debt owed to NCB's client, a magazine publisher. 988 F.2d 1314, 1316. This letter was one of about a million that NCB sent each year on the publisher's behalf. *Id*. The publisher would provide NCB a computer tape containing delinquent account information, which NCB transferred onto its own computer system, merging such information with a form letter, without any NCB employee's reviewing an individual debtor's file. *Id*. at 1316-17. An attorney had approved the form of the letter and the computerized procedure for generating it. *Id*. The letters to plaintiff were on the attorney's letterhead, and bore a reproduced facsimile of his signature. *Id*.

---

10  The *Lesher* majority discounted the disclaimer on the back of the letter stating that no attorney had been involved, noting that it directly contradicted the message on the front of the letter that the matter had been referred to the attorney for collection. *Id*. at 1003. In addition to the discrepant language, *Lesher* cited the disclaimer's location on the reverse side, but the extent to which the disclaimer's lack of physical prominence influenced the analysis is not clear.

A letter on attorney letterhead and signed by an attorney, containing a statement that no attorney was involved in its production, has a certain surreal quality. *Cf*. Rene Magritte, "The Treachery of Images" (Belgium, 1929), *image available at* website of Los Angeles County Museum of Art, http://collections.lacma.org/node/239578 (a depiction of a pipe, titled "Ceci n'est pas une pipe" ["This is not a pipe"], praised by the LACMA curator as a "Surrealist masterpiece[]"). Even an informed reader might find the logic more evocative of Dali than of Euclid. And the hypothetical "least sophisticated debtor," from whose point of view the letter is assessed under FDCPA, might just be baffled.

The Court of Appeals for the Second Circuit agreed with the district court that the record demonstrated a violation of the FDCPA, particularly Section 1692e, subsections (3) and (10). *Id.* at 1320. It reasoned that the letters purported to be from an attorney, but that this was "false and misleading because in fact Jackson did not review each debtor's file; he did not determine when particular letters should be sent; he did not approve the sending of particular letters based on the recommendations of others; and he did not see particular letters before they were sent[.]" *Id.* The Second Circuit held that "the use of an attorney's signature implies—at least in the absence of language to the contrary—that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent." *Id.* at 1321. Accordingly, the court opined, mass produced letters signed by an attorney will almost always contain misrepresentations. *Id.*

The Court of Appeals for the Seventh Circuit, too, requires meaningful attorney involvement before an attorney or firm sends a collection letter. In *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), that court upheld the district court's finding that the attorney debt collector "violated § 1692e(3) and (9) because his collection letters create the false and misleading impression that the communications were from an attorney when, in fact, they were not really 'from' an attorney in any meaningful sense of the word." 84 F.3d at 229 (citing *Clomon*, 988 F.2d at 1314-1316). The *Avila* court reasoned:

> An unsophisticated consumer, getting a letter from an "attorney," knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking.
>
> A letter from an attorney implies that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process through which the letter was sent. ... The attorney letter implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action. And the letter also implies that the attorney has some personal involvement in the decision to send the letter.

*Id.* Accordingly, the court ruled that "if a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file. Any other result would sanction the wholesale

licensing of an attorney's name for commercial purposes, in derogation of professional standards[.]" *Id.*

The Seventh Circuit elaborated further in *Nielson v. Dickerson*, 307 F.3d 623 (7th Cir. 2002). There, the attorney (like Gulko in this matter) had at least reviewed the letter before it was sent. The *Nielson* creditor periodically forwarded the attorney a computer disk containing debtor information, such as "each debtor's account number, name, address, account balance, and the amount past due." 307 F.3d 623, 626. The firm's "reformatt[ed] the data into its own system" and "pulled the data up onto a computer screen to check for any obvious gaps or errors in the data." *Id.* The firm's computers would also check the data against various databases, *e.g.*, recent bankruptcy declarations, flagging the file as needed. If the information was without gaps, errors, or flags, it was used to populate a form collection letter developed by the defendant attorney. *Id.* at 626-627. Eventually, the attorney, who had considerable experience in the field, "himself reviewed nearly all of the printouts of the pertinent data, although his review was admittedly quite brief," perhaps a "few seconds to each account." *Id.* at 627.

The Seventh Circuit affirmed the trial court's findings that the attorney had violated Section 1692e, particularly subsections (3) and (10). It held, as in *Avila*, that a "letter that is issued on an attorney's letterhead and over his signature conveys the notion that the attorney has 'directly controlled or supervised the process through which the letter was sent[,]'" and "implies that the attorney has reached a considered, professional judgment that the debtor is delinquent." *Id.* at 635. If such an implied representation is to be accurate, "the attorney must have genuine involvement in the process through which the letter was sent to the debtor." *Id.* Though the court "acknowledge[d] that [the attorney] took some steps" in reviewing the letter before it was sent, it agreed with the district court that these were "no more than a 'veneer' of compliance," because the attorney "made no independent, professional assessment of the delinquency and validity of any debt, did not select the debtors to whom a letter would be sent," and reviewed only the finished form letter and "the debtor information supplied by [the creditor], but only in the sense of literally looking at the data and checking for errors." *Id.* at 638. The court found that attorney's review to be "ministerial" in nature, and with respect to his three-second review, "the brevity of that review lays bare its cursory nature." *Id.* at 636-67.

*Lesher* and the cases it cites, *Clomon, Avila, and Nielson,* address collection letters specifically. This much is clear: When a law firm sends a collection letter in its name, it represents that an attorney is meaningfully involved in a professional capacity, and such a representation is false or misleading if in fact there has been no attorney involvement, or only superficial, ministerial attorney involvement.[11]

---

[11]     Pressler attempts to minimize the "meaningful involvement" rule by saying

## 2. Does the *Lesher* rule apply to civil complaints?

Bock urges that the FDCPA case law regarding collection letters applies equally, or *a fortiori*, to a civil complaint, which carries an even weightier implication of attorney involvement.

### a. *Potential bases to distinguish the case of a civil complaint*

I consider two possible bases to distinguish the case of a civil complaint from that of a collection letter. The first is a statutory-construction argument that Section 1692e is intended only to reach direct communications between a debt collector and debtor. The second is a more policy-based argument that, once a complaint is filed, the FDCPA statute has exhausted its purpose and the court rules take over the task of monitoring attorney conduct.

The parties do not really develop these arguments, so I touch on them only briefly. For the reasons set forth here, I find that the rationales of the appellate cases discussing collection letters apply equally to a civil complaint. And even if I thought otherwise, I would not be free to enact my own conception of the proper scope of FDCPA where the statutory wording is broad and nothing in it would suggest that a civil complaint is outside its scope.

The argument that Section 1692e is confined to direct communications between a debt collector and debtor seems to arise from certain of its subsections. Those subsections list some nonexclusive examples of deceptive or misleading practices, including

> (3)  The false representation or implication that any individual is an attorney or that any communication is from an attorney.

> (9)  The use or distribution of any written communication...which creates a false impression as to its source, authorization, or approval.

> (10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Those subsections, however, are merely nonexclusive examples of conduct that would violate the more general mandate of Section 1692e that a "debt collector may not use *any* false, deceptive, or misleading representations or means *in connection with* the collection of any debt." 15 U.S.C. § 1692e (emphasis

---

that it concerns only an extreme case where a law firm rents out its letterhead to a non-lawyer for collection purposes, with "zero attorney involvement." (Pressler's Br. Supp. Mot. Summ. J. at pp. 15-21). The cases are not confined to that scenario. *See Miller, supra; Nielson, supra.* And the only thing that stands between this case and "zero attorney involvement" is four seconds of attorney review.

14

added). *Lesher* repeatedly cites 1692e generally; its citations to specific subsections in no way undermine FDCPA's more general prohibition of the use of false, deceptive or misleading means. "Any" is not a stringent prerequisite. The statute prohibits not just misleading "representations," but also misleading or deceptive "means," amounting to a very broad prohibition. And the deceptive representations or means are not limited to a narrow factual context; they need only be employed "in connection with" debt collection. *See McLaughlin v. Phelan Hallinan & Schmeig, LLP*, No. 13-2015, slip op. at 7 (3d Cir. June 26, 2014) (conduct "in connection with" the collection of a debt includes "activity undertaken for the general purpose of inducing payment").

As *Lesher* recognizes, the FDCPA is a broad, remedial statute, and as such must be construed liberally. *Lesher*, 650 F.3d at 997; *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 602 (2010) (interpretation of FDCPA to allow a mistake-of-law defense would be inconsistent with its "broadly worded prohibitions on debt collector misconduct"). I cannot find in Section 1692e any language of limitation that would confine its scope to letters, or even to direct communications between debt collector and debtor.

At any rate, the subsections of Section 1692e, even viewed in isolation, stop short of requiring that the "representation" or "communication" be one that is directly addressed to the debtor. To be sure, it often will be, but the holding of *Lesher* is not so narrow. Nowhere, for example, does *Lesher* limit its holding to collection letters on the basis that they are "representations" to a debtor under subsections (3) and (10), or "communications" to a debtor under subsection (9). Instead, *Lesher* rests on the broader rationale that a communication under an attorney's name is misleading if the attorney, acting in his or her professional role, has not meaningfully participated in its production. Nothing about that logic would apply only to an attorney's collection letter, as opposed to a civil complaint.

Finally, even if Section 1692e were confined to direct attorney-debtor communications, I would find unpersuasive the notion that a civil complaint cannot constitute such a communication. A civil complaint, like a letter, is a writing produced by the creditor's attorney. Like a letter, it is communicated to the debtor. True, it is initially filed in court, but the court is not its only intended audience. The complaint must be served on the defendant (here, the debtor) before the action can go forward. *See generally* Fed. R. Civ. P. 4; N.J. Ct. R. 4:4. From the start, it is understood by all that a primary purpose of the complaint is to place, not just the court, but the defendant, on notice of the claims.

Nevertheless, it may be asked whether the adequacy of an attorney's pre-suit investigation *should* be considered a proper subject of regulation under

15

FDCPA. That is Pressler's question, and it is a good one. The policy arguments in favor of a "no" answer are by no means frivolous.

It is possible, for example, to read into Section 1692e, and especially its subsections, a legislative intent to protect uncounseled debtors from the false implication that, unless they pay, they will be sued. When a complaint is filed, that prediction has come true. At that point, the debtor will obtain legal counsel, or decide to go it alone. In either case, the matter is now in court, where procedures are in place to ensure that valid legal arguments will succeed, and invalid ones fail. The danger of debtors' being intimidated by unfounded legal claims is diminished if not eliminated.

Relatedly, one might argue that, once the case is at the complaint-filing stage, the court rules, not the FDCPA, should govern the adequacy of attorney review. When the case is still at the letter-writing stage, the FDCPA fills a regulatory gap, imposing standards on the unsupervised activities of debt collectors, including attorneys. But by bringing the matter to court, the attorney has subjected it to an ethical supervisory regime.

The short answer to these contentions is that it does not matter. Because the statutory language is broad enough to encompass a civil complaint, it must be given its natural scope. *See generally Sebelius v. Cloer*, 133 S. Ct. 1886, 1896 (U.S. 2013) (Sotomayor, J.) ("[W]hen [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank*, N.A., 530 U.S. 1, 6 (2000) (Scalia, J.); *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989) (Blackmun, J.) (citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

Thus, in *Heintz v. Jenkins*, 514 U.S. 291 (1995), the Court confronted an argument that the FDCPA's definition of a "debt collector" contains an implied "attorney exemption." That attorney/defendant pointed to "anomalies" that would result if litigation activities were to fall within the statute's scope. *Id.* at 295. Every unsuccessful lawsuit, he contended, might be considered a deceptive practice, and the filing of an action might be deemed a forbidden "communication" with a non-consenting debtor. He pointed to a statement by one legislative sponsor that the FDCPA, as amended, would reach attorneys, "not because of [their] conduct in the court-room, but because of their conduct in the backroom." *Id.* at 297. The Court was unmoved; the statute itself contained no exemption for debt collection by attorneys (indeed, a prior exemption had been repealed). And neither the Court nor, for that matter, the FTC could create a litigation exemption, which would "fall[] outside the range of reasonable interpretations of the Act's express language." *Id.* at 298. In short, FDCPA "applies to the litigating activities of lawyers." *Heintz*, 514 U.S. 291, 294; *FTC v. Check Investors, Inc.*, 502 F.3d at 173 n. 11 (citing *Heintz*) ("Attorneys who regularly engage in debt collection or debt collection litigation are covered by the

FDCPA, and their litigation activities must comply with the requirements of the FDCPA."), *quoted in Chulsky v. Hudson Law Offices, P.C.*, 777 F. Supp. 2d 823, 830 n. 5 (D.N.J. 2011) (Wolfson, D.J.).

The policy arguments for exempting civil complaints from the coverage of FDCPA are similar, and they merit similar treatment. The language of Section 1692e is clear enough; it contains nothing suggesting a distinction between attorney letters and civil complaints for these purposes.

### 3. What level of attorney involvement is implied by the filing of a civil complaint?

*(a) The relevance of Rule 11 and the NJ Rules of Court*

A civil complaint, then, like an attorney letter, may be misleading within the meaning of FDCPA if it implies attorney involvement, but such involvement is lacking. A law firm that signs a complaint represents not only that an attorney is involved, but that the attorney has had a certain level of involvement in his or her professional capacity.

What level of involvement? Guidance may be found in New Jersey Rule of Court 1:4-8 and Federal Rule of Civil Procedure 11, which set forth the exact representations (express or implied) that an attorney makes by signing a complaint. New Jersey's rule, which applies to the state-court complaint at issue here, provides:

> The signature of an attorney or pro se party constitutes a certificate that the signatory has read the pleading, written motion or other paper. By signing, filing or advocating a pleading, written motion, or other paper, an attorney or pro se party certifies that to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: ...

> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

> (3) the factual allegations have evidentiary support or, as to specifically identified allegations, they are either likely to have evidentiary support or they will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support...

N.J.R.Ct. 1:4-8(a) ("Effect of Signing, Filing or Advocating a Paper") (emphasis added); *cf.* Fed. R. Civ. P. 11(b). An attorney who signs a complaint represents that he or she has "read the pleading" and made an "inquiry reasonable under the circumstances," and that "to the best of [their] knowledge, information, and belief" formed upon such an inquiry, the claims and contentions "are warranted" under the law and "the factual allegations have evidentiary support or, as to specifically identified allegations, they are either likely to have evidentiary support[.]" N.J.R.Ct. 1:4-8(a); *see also* Pressler & Verniero, *N.J. Court Rules (Gann)*, R. 1:4-8 at cmt. 1 ("Paragraph (a)...includes specific implied representations regarding the factual and legal basis of the asserted claim or defense...").

Plaintiff Bock asserts, and I agree, that the rules of court serve a limited function under FDCPA. That is, the FDCPA does not incorporate rules of court by reference or create a private cause of action for their violation. Rather, the rules of court help to define the level of attorney involvement that is impliedly represented by the filing and service of a complaint.

I shall therefore articulate a holding rooted in the existing standards of Rule 1:4-8 and Fed. R. Civ. P. 11(b), without creating a confusing parallel regulatory regime. Before doing so, however, I discuss the only district court case I have found that discusses this FDCPA issue with regard to a civil complaint.

### (b) *Judge Mauskopf's* Miller *ruling concerning signed complaints*

Bock cites a published opinion from the U.S. District Court for the Eastern District of New York, *Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86 (E.D.N.Y. 2009). *Miller* is unique, I believe, in that it exhaustively addresses whether the plaintiff established an FDCPA violation based on the defendant law firm's scanty review of a civil complaint.[12] In *Miller,* the plaintiff debtor had failed to pay his revolving charge account at the Lord & Taylor department store. Lord & Taylor was a longtime client of a Washington, DC-area law firm, Wolpoff & Abramson. Wolpoff, in turn, referred Lord & Taylor's claim against Miller to Upton, Cohen & Slamowitz ("UCS"), its longtime local counsel for debt collection in New York, where Miller was located. Wolpoff, after reviewing the information itself, electronically transmitted to UCS the pertinent data required to proceed with collection. *Id.* at 90. UCS, however, "did not have direct access to Lord & Taylor's file, which included, among other things, the controlling credit card

---

[12] The attorney signed a collection letter as well, and the analysis does not always distinguish between the two—but that may be the point.

Pressler points to evidence in *Miller* that the attorney had not logged in to review the matter until after the complaint was filed. (Pressler's Br. Opp. Bock's Mot. Summ. J. at p. 26). Judge Mauskopf did not make much of this evidence, and there is no indication that it played any significant role in her analysis. Rather, she focused on the attorney's lack of involvement and inquiry before signing either the collection letter or collection complaint.

agreement, Miller's correspondences, Miller's complete credit card payment history, and documentation of Lord & Taylor's internal collection efforts." *Id.* at 93. Indeed, retrieval of any information beyond basic 'pedigree' information about the debtor required UCS to directly contact Wolpoff or vice-versa—which did not happen in this case." *Id.* at 93.

UCS sent a collection letter to Miller, and thereafter filed in state court a civil complaint against Miller. Miller filed a FDCPA suit against UCS based on both the letter and the civil complaint. *Id.* at 90.

Initially, the district court entered summary judgment against Miller on all claims. The Second Circuit, however, reversed and "remanded for further development of the factual record concerning the single issue of whether or not Wolpoff and UCS had conducted a sufficiently meaningful attorney review of Miller's file...as required under FDCPA § 1692e." *Id.* at 88 (citing *Miller v. Wolpoff & Abramson, L.L.P.* ("*Miller I*"), 321 F.3d 292 (2d Cir.), *cert. denied*, 540 U.S. 823 (2003)).[13] In *Miller I*, the Second Circuit held that "some degree of attorney involvement" is required for a letter to truthfully fulfill its implied status as a communication "from an attorney." 321 F.3d at 300. The Court of Appeals declined, however, to "declare a minimum standard" as to the amount of review required. *Id.* at 304.

On remand, District Judge Roslynn Mauskopf convened a bench trial and found in Miller's favor. In her published opinion, Judge Mauskopf summarized the trial evidence. Some highlights: UCS had "robust" prescreening measures designed to "ensure the accuracy of the data" forwarded to it. It was a UCS paralegal who oversaw the preparation of a draft summons and complaint against Miller. Slamowitz, the attorney who signed the letter, summons, and complaint, did so without reviewing either the physical or electronic file concerning Miller's debt. Any physical review of Miller's file was conducted by non-attorney personnel at UCS. Slamowitz and his partner signed 211 collection letters on the same day they signed the collection letter to Miller. *Id.* at 94.

Reviewing the law on sufficient attorney review, Judge Mauskopf cited many of the same cases cited in *Lesher*. She determined that Slamowitz and UCS impliedly represented, in the collection letter and complaint, that they were involved in the case against Miller. But the "superficial level of review undertaken by Slamowitz and UCS was insufficient under the FDCPA" to justify that implied representation. *Id.* at 96.

Judge Mauskopf made numerous holdings as to what constitutes adequate (or inadequate) attorney review. She held:

- An attorney's review of "basic debtor information—the informational

---

[13] This Second Circuit opinion, which I refer to as "Miller I," is the one cited by the Third Circuit in *Lesher*.

equivalent of 'name, rank, and serial number'—without more, is insufficient data on which to form a reasoned professional judgment as to the appropriateness of a collection action. *Id.* at 97 (citing *Miller I,* 321 F.3d at 305 (finding that evidence that an attorney reviewed Plaintiff's full name, SSN, address, occupation, account number, and amount of debt, prior to signing a collection *letter,* did not constitute sufficient evidence to conclude "as a matter of law that any professional judgment was exercised before UCS sent its collection letter.") and *Nielsen,* 307 F.3d at 635-38 (finding that attorney "failed to conduct a sufficiently meaningful review of his debt collection matters" where he merely looked at basic client data and checked for accuracy and typographical errors, following up on other automated reviews, before sending a letter bearing his name.)).

- An attorney who commences a collection action must "review underlying debtor information such as the underlying contract and/or client file." *Id.* (finding that Slamowitz, to avoid misrepresenting his involvement in Miller's case, "would at a minimum have...to review at least certain available data that he wholly ignored...at least (a) Miller's credit card agreement with Lord & Taylor and (b) Lord & Taylor's own files detailing their previous in-house debt-collection efforts.").

- "[W]here an attorney commences suit in so uninformed a matter that he is ignorant as to what law governs his suit [having not reviewed the underlying credit card agreement], it cannot be said that he has undertaken a level of review sufficient to satisfy even the most general requirements applicable to attorney conduct, let alone the more focused review requirements established by the FDCPA." *Id.* at 97-98.

- An attorney's "failure to obtain and review" his client's file "provides an adequate and independent basis for FDCPA liability." *Id.* at 98. Judge Mauskopf found it compelling that Slamowitz and his partner handled "no fewer than 211 debt-collection letters" on the same day they approved the letter to plaintiff. *Id.* at 99-100.

- "Even prior review of an individual debtor's file by another, including co-counsel, is no substitute for an independent review by the attorney signing and issuing [a communication]." *Id.* at 101.

Like the Seventh Circuit in *Nielson,* the Second Circuit in *Cloman,* and the Third Circuit in *Lesher,* Judge Mauskopf found that the attorney debt collectors "did not conduct a sufficient attorney review for FDCPA purposes" before signing the collection letter, and she extended that reasoning to the collection complaint as well. *Id.* at 99. She further ruled that "generalized review procedures," reviews

conducted by the other law firm, and review by paralegals did not make up for the deficiencies in the UCS attorney's cursory review. *Id.* at 101-102.[14]

### (c)   *Standards of meaningful attorney review*

I believe that the reasoning of such cases as *Lesher, Clomon* and *Nielson,* especially as supplemented by *Miller,* compels the application of the "meaningful involvement" rule to a civil complaint. The filing of such a complaint entitles the proverbial "least sophisticated debtor" to conclude that an attorney is working vigorously on the creditor's behalf, is reasonably knowledgeable about the creditor's case against the debtor, and has exercised his or her professional judgment. *Cf. Lesher,* 650 F.3d at 1003 ("In our view, the least sophisticated debtor, upon receiving these letters, may reasonably believe that an attorney has reviewed his file and has determined that he is a candidate for legal action."); *Miller,* 687 F. Supp. 2d 86, 95 (quoting *Avila,* 84 F.3d at 229). The legitimacy of this belief does not depend on court rules, such as Rule 11 and New Jersey Rule of Court 1:4-8, but such rules give force and content to it. Indeed, such rules merely codify basic, justifiable assumptions underlying the litigation process.[15]

Pressler objects, arguing that that the allegations of the complaint are not false, but that contention is a red herring. The claimed misrepresentation here does not relate to the ultimate veracity of the numbered factual allegations of the complaint; it concerns the veracity of the implied representation that an attorney was meaningfully involved in the preparation of the complaint. If, in fact, the attorney who signed the complaint is not involved and familiar with the case against the debtor, then the debtor has been unfairly misled and deceived within the meaning of the FDCPA, 15 U.S.C. § 1692e.[16]

---

[14]   In a recent opinion, Judge Catherine C. Blake of the District of Maryland cited *Miller* for the proposition that "[a] collection complaint can be misleading, in violation of the FDCPA, where it is filed with without an attorney's sufficient review of the legal basis for the claim." *Richardson v. Midland Funding, LLC,* 2013 U.S. Dist. LEXIS 177240 at *23 (D. Md. Dec. 18, 2013). Counsel for Pressler cited *Richardson* for the proposition a single attorney's status as "counsel of record in approximately 11,668 other collection cases" did not in itself prove that meaningful attorney involvement was lacking. Judge Blake dismissed the case, but only because it lacked sufficient allegations as to the attorney's level of involvement and the firm's review process.

[15]   Pressler argues that Bock has waived his arguments because, in state court, he did not follow the requirement of Rule 1:4-8 that a party who wishes to move for sanctions must first place his adversary on notice and afford the adversary the opportunity to withdraw the pleading that is objected to. This is an FDCPA case, not a state court motion for sanctions. Rule 1:4-8, as noted above, helps give content to the FDCPA prohibition of misleading representations, but it is not the source of plaintiff's rights or remedies here.

[16]   Failure to appreciate that distinction may account for Pressler's citation of

Accordingly, I hold that a signed complaint is inherently false and misleading, in violation of 15 U.S.C. 1692e, where, at the time of signing, the attorney signing it has not

> 1) drafted, or carefully reviewed, the complaint; and

> 2) conducted an inquiry, reasonable under the circumstances, sufficient to form a good faith belief that the claims and legal contentions in the complaint are supported by fact and warranted by law.

*See* N.J. Ct. R. 1:4-8(a); Fed. R. Civ. P. 11; *Lesher* at 1002-1003; *see also Miller* at 99-102; *Nielson*, 307 F.3d at 635-638. This holding is not as detailed or prescriptive as that of Judge Mauskopf, but I think it is best to establish the principle more generally and allow for more detailed case-by-case elaboration.

I add the following caveat in response to Pressler's argument that the rules require only a belief that the allegations are likely to have evidentiary support. That is, I think, a misapplication of N.J. Ct. R. 1:4-8(a) and Rule 11, as well as common pleading practice. The attorney's good faith belief cannot simply be willed into existence, but must be "formed after an inquiry…" R. 1:4-8. The Court Rule's reference to the "likely" existence of evidence is not a license to allege facts in the unexpressed hope that evidence may turn up. The Rule requires that factual allegations "have evidentiary support or, *as to specifically identified allegations,* they are … likely to have evidentiary support [or will be withdrawn]" "Specifically identified allegations" is an obvious codification of the practice of

---

inapposite case law. *Harvey v. Great Senaca Financial Corp.*, 453 F.3d 324 (6th Cir. 2006) addressed a claim that a complaint was harassing and deceptive, in violation of Sections 1692d and 1692e(10), because it was filed without the immediate means to prove the debt. The Sixth Circuit Court of Appeals only addressed issues concerning the substantive accuracy of the complaint, not the truthfulness of the attorney's implied representation of meaningful involvement. *Id.* at 331-333. *See also Deere v. Javitch*, 413 F. Supp. 2d 886, 890-891 (S.D. Ohio 2006) (cited by Pressler but also unrelated to the issue of the attorney's representation of involvement). Pressler also relies on *Derricotte v. Pressler & Pressler*, 2011 U.S. Dist. LEXIS 78921, *15-16 (D.N.J. 2011) (Sheridan, J.), a case based solely on alleged harassment in violation of Section 1692d. Finally, Pressler cites *Christion v. Pressler & Pressler*, 2010 U.S. Dist. LEXIS 23751 (D.N.J. 2010) (Sheridan, J.). That case, brought generally under the FDCPA, contained no claim of deception or misrepresentation, and did not cite Section 1692e; rather, it dealt in isolation with the statutory procedure for verification of a debt that a debtor disputes, which is not necessarily a prerequisite to filing a collection action. *Id.* at *9-11. This case, by contrast, does allege misrepresentation, and a very particular type of misrepresentation at that. It arises under a separate section of the statute, and invokes a body of law that Judge Sheridan had no occasion to address. Finally, I note that Judge Sheridan only affirms the relevance of Rule 11 (and its state law equivalents) in attorney debt-collectors' litigation activities, in that he states that a failure to have all of the required documentation to prove a debt is irrelevant so long as the attorney can file a complaint in accord with his Rule 11 certifications. *See id.* I agree.

*explicitly* alleging, "on information and belief," facts that a plaintiff could not reasonably be expected to know— for example, facts within the exclusive control of defendant. Under the Federal Rules as well, pleading on information and belief "does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to...make claims...without any factual basis or justification." Fed. R. Civ. P. 11, Notes of Advisory Committee on 1993 Amendments; *see generally Levey v. Brownstone Investment Group,* 2012 U.S. Dist. LEXIS 23071 at *6-7 (Feb. 22, 2012). Allegations on information and belief, made on a valid basis and identified as such, would not be barred by the two principles I state today. But Pressler's retroactive invocation does not help its case. The state court complaint does not state that any of its allegations are made on information and belief, and even now Pressler does not offer any legitimate justification for such pleading, where a review of the file might well have established the relevant facts. In short, the notion that allegations were "likely" to have evidentiary support is a non-issue here.

These two requirements stated above distill from case law and practice what a debtor may reasonably conclude about the attorney's level of involvement when the attorney has signed and filed a collection complaint against the debtor. Viewed from the attorney's perspective, these principles set forth what the FDCPA requires in order to render the attorney's implied representations of meaningful involvement truthful and insulate the complaint from attack.

### D. Did Pressler's review of the state court civil complaint against Bock comply with the FDCPA requirement of meaningful attorney involvement?

Ralph Gulko, Pressler's only attorney handling collection complaints filed in New Jersey courts, signed the complaint against Bock. He did not draft the complaint, and he did not carefully read and review it in any meaningful sense. He did not conduct any inquiry concerning Midland's claim against Bock, let alone one which could have permitted him to form a good faith belief that the allegations against Bock had evidentiary support and were actionable under applicable law. Accordingly, Pressler violated the general prohibitions of 15 U.S.C. § 1692e, as well as subsections (3) and (9) in particular.

First, the undisputed evidence shows that Gulko, and by extension, Pressler, neither drafted nor carefully reviewed the complaint. Mr. Gulko was the only attorney involved in the entire process. He admits that the draft complaint was on his computer screen for no more than four seconds. (Gulko Aff. at ¶ 12). He states that his brief review consisted of comparing certain contents of the complaint, displayed on one of his computer screens, to data appearing on his other computer screen, to ensure the complaint's accuracy. (*Id.* at ¶¶ 5-6, 8). The evidence shows, then, that in those four seconds Mr. Gulko's eyes darted back and forth between his two computer monitors, making sure the debtor name,

creditor name, and amount of indebtedness stated on the complaint reflected the data file stored by Pressler. (*See id.*). Gulko's rapid look-over of the complaint against Bock, one of 673 complaints he reviewed that day (Gulko Aff. at ¶ 12), cannot really be considered a careful review of the complaint, let alone an exercise of the professional skills of a lawyer.

Second, even if Gulko had somehow managed to carefully review the complaint in those four seconds, it cannot be said that he conducted any inquiry into Midland's claim against Bock. There is no dispute that neither Gulko nor any attorney at Pressler had any involvement in the Bock matter prior to Gulko's final review on October 20, 2010. (*See* Gulko Dep. Testimony at 26:14 to 27:12; Gulko Aff. at ¶ 9; Felt Aff. at ¶¶ 9-26). I find that no inquiry whatever could conceivably have occurred in the time that Gulko spent reviewing the complaint against Bock. This fleeting review was not sufficient to permit an attorney to form a good faith opinion concerning the evidentiary support for Midland's claim against Bock or the applicable legal basis for that claim. That is an inescapable inference from the four-second duration of Gulko's review— but there is more. The undisputed evidence confirms that neither Gulko nor anyone else at Pressler (including its vaunted computer system) ever reviewed basic materials like the underlying cardmember agreement (to confirm that there was a legal basis to collect from Bock, to confirm what law governed, and to confirm that venue was proper). No one at Pressler reviewed the assignment that allegedly transferred ownership of the debt to Midland. (*See* Bock's Statement at ¶¶ 47, 50; Pressler's Resp. Statement at ¶¶ 47, 50). Yet the very first allegation in the complaint against Bock is that "[Midland Funding LLC] is now the owner of the defendant(s) [*sic*] HSBC Bank Nevada, N.A. account number 5458001561298245 which is now in default." (Williamson Cert. at Ex. B). There can be no legitimate contention that Gulko, through reasonable inquiry, arrived at a good faith belief in the truth of this allegation. Yet, by filing a complaint, he impliedly represented that he had.

If there were evidence in the record that the attorney had acquired knowledge of the pertinent contents of the cardmember agreement or the chain of assignment through some other, indirect means, it might be possible to give less weight to the four-second duration of review. But there is no such evidence; Pressler took the electronic data at face value. The inquiry implied by the attorney's filing of the complaint simply did not occur.

*Pace* Pressler's objections, the preparatory actions taken by other non-attorneys at the firm do not insulate this complaint from a charge of deception. *Miller*, 687 F. Supp. at 101 ("Even prior review of an individual debtor's file by another, including co-counsel, is not substitute for an independent review by the attorney signing and issuing [a communication]."); *Nielson v. Dickerson*, 307 F.3d at 635-37. Those preliminary "scrubs," in any event, were largely concerned with basic "pedigree" data and red flags, like bankruptcy, that would bar a suit. And,

as noted above, no person or computer at Pressler ever checked the cardholder agreement or the chain of assignment.

In sum, the evidence shows that the only attorney involvement in connection with Midland's claim against Bock prior to Pressler filing suit on Midland's behalf was a hurried, ministerial review of the accuracy of certain aspects of the complaint. There was no reasonable inquiry or exercise of professional judgment. This would not meet the *Lesher/Nielson* standards for meaningful attorney involvement when sending collection letters, and it does not meet the standards for filing a complaint.

There is no genuine material issue of fact requiring trial. I hold that Pressler, when it signed and filed the state court civil complaint against Bock, violated the FDCPA, 15 U.S.C. § 1692e.

## CONCLUSION

For the reasons stated above, the motion for summary judgment of Bock is **GRANTED** and the motion for summary judgment of Pressler is **DENIED**. The parties shall, if they wish, submit letter briefs not to exceed ten pages as to the appropriate measure of damages. Plaintiff's brief shall be due in seven days, and Defendant's brief seven days thereafter.

HON. KEVIN MCNULTY
United States District Judge

Dated: June 30, 2014
Newark, New Jersey

25